**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A. Miner Contracting, Inc., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>Dana Kepner Company, Inc., a Delaware Corporation; Does 1-50; Black & White Companies; Limited Liability Companies or Partnerships I-X,<br><br>Defendant. | No. CV-12-08198-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff A. Miner Contracting, Inc.'s ("Miner") Petition to Vacate Arbitration Award and Award of Fees and Costs. (Doc. 1.) For the reasons discussed below, Miner's Petition is denied.

**BACKGROUND**

In April 2010, Miner filed suit against Dana Kepner Company, Inc. ("Kepner") alleging that (1) Kepner had sold Miner defective ductile pipe in connection with a municipal construction project on Prescott (the "Zone-39 Project") and that (2) Kepner breached the parties' contract by stopping deliveries to Miner on the Groom Creek Project. (Doc. 6 at 2.) Miner sought damages for tort and contract claims, as well as a declaration that the parties' contract was invalid. (*Id.* at 2–3.) Miner's claims regarding the Zone-39 Project center on a meeting held between the parties in March 2009, where

Miner alleges that a Kepner representative either affirmatively misrepresented the quality of the pipe or concealed known defects with the pipe. (Doc. 1 at 4–5.) Miner's claim regarding the Groom Creek Project involves Kepner's cessation of shipping materials to Miner in 2007, in spite of a contract between the parties and Kepner's alleged "custom and practice" of giving a customer two to three weeks before placing a credit hold on the customer's account. (*Id.* at 6.) Kepner counterclaimed against Miner for its failure to pay for materials and filed third-party claims against Guarantee Company of North America ("GCNA"), Miner's surety company. (Doc. 6 at 3.)

In December 2011, the parties agreed to arbitrate the dispute. (*Id.* at 3.) The arbitration was held over three days in February 2012. (*Id.*) On April 3, 2012, the arbitrator issued a Preliminary Award rejecting all of Miner's claims and finding in favor of Kepner's counterclaims and third-party claims, awarding Kepner $201,100 in initial damages jointly and severally against Miner and GCNA. (Doc. 6 at 4; Doc. 1-D at 13–14.) The arbitrator then ordered the parties to brief the issue of attorney's fees, interest, and costs. (Doc. 6 at 4.) On June 28, 2012, the arbitrator issued a Fee and Cost Award in favor of Kepner. (*Id.* at 5.) This Award incorporated the Preliminary Award and granted Kepner a total of $626,892.36 against Miner and GCNA, jointly and severally. (*Id.*) Miner paid the full amount of the award shortly thereafter. (*Id.*)

Miner now brings suit contending that it is entitled to vacation of the arbitration award because the arbitrator failed to follow controlling legal authority and exceeded the scope of his authority. It argues four grounds for vacating the award: (1) the arbitrator ignored the law on the issue of Kepner's waiver of timely performance, (2) the arbitrator's findings on the tort claims were unsupported by the law, (3) the arbitrator's decision on Miner's negligent misrepresentation claim had no legal basis, and (4) the arbitrator exceeded his authority in granting Kepner fees and costs.

## DISCUSSION

### I.   Legal Standard

The Federal Arbitration Act enumerates the limited grounds on which a federal

court may vacate, modify, or correct an arbitration award. 9 U.S.C. §§ 9, 10. The statute permits vacation only if (1) corruption or fraud was involved, (2) the arbitrators were evidently partial or corrupt, (3) the arbitrators were guilty of misbehavior, or (4) the arbitrators exceeded their powers. *Id.* § 10. Thus, the statute requires confirmation of an award "even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera Corp. v. Prudential-Bache Trade Svcs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003). In addition, the Ninth Circuit has "adopted a narrow 'manifest disregard of the law' exception under which a procedurally proper arbitration award may be vacated." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).

## II.   Waiver of Timely Performance

Miner asserts that the arbitrator manifestly disregarded the law on the issue of Kepner's waiver of timely performance with regard to the Groom Creek Project. In order to obtain vacation of an arbitration award for manifest disregard of the law, the petitioner must show that "the arbitrators recognized the applicable law and then ignored it." *Collins*, 505 F.3d at 879. Furthermore, the applicable law must have been "well defined, explicit, and clearly applicable." *Id.* at 880. Thus, "mere allegations of error are insufficient." *Id.* at 879.

Miner concedes that it withheld $201,000 from Kepner "as its estimated damages" in connection with the Zone-39 Project. (Doc. 1 at 6.) Though the contract between the parties had a clause requiring payment within thirty days, Miner asserts that in the years that Miner and Kepner did business together, Kepner never enforced that clause. (*Id.* at 8.) Thus, Miner claims, Kepner waived its right to timely payment and was required to notify Miner of its intent to enforce the clause before bringing suit on it. (*Id.*)

The arbitrator found that there was "not sufficient evidence that Dana Kepner actually had a custom and practice contrary to its Standard Terms and Conditions for Sale." (Doc. 1-D at 12.) Miner contends that the arbitrator "completely ignored the law" in finding that Kepner had not waived timely payment, but in making its argument objects primarily to the arbitrator's failure to take into account certain evidence. (Doc. 1

- 3 -

at 8.) Discounting evidence does not constitute manifest disregard of the law, and an arbitration award cannot be vacated "even in the face of erroneous findings of fact." *Kyocera*, 341 F.3d at 997. Miner has not demonstrated that the arbitrator acted in a way that would justify this Court's vacation of the arbitration award. Miner's Petition is denied on this ground.

### III.   Miner's Tort Claims

Miner contends that the arbitrator's finding against Miner on its claims of fraudulent misrepresentation are "unsupported by law." (Doc. 1 at 9.) It points to Arizona case law setting out the definition of fraudulent concealment and argues that the arbitrator's decision in Kepner's favor "ignored case law and evidence" supporting Miner's position. However, the Preliminary Order indicates that the arbitrator thoroughly analyzed Miner's fraudulent misrepresentation claim and found that any statement or omission by Kepner's representative would "not be a misrepresentation since [the representative] believed that the [problems with the pipe] were caused by that contractor, not ACIPCO's pipe products." (Doc. 1-D at 10.) There is no indication that the arbitrator deliberately ignored well-defined law. Miner appears to disagree with the evidence on which the arbitrator chose to rely in making his decision, but that is not grounds for vacating an arbitration award. Miner's Petition on this ground is therefore denied.

### IV.   Miner's Negligent Misrepresentation Claim

Miner argues that the arbitrator was "analyzing the [negligent misrepresentation claim] on the wrong elements." (Doc. 1 at 11.) Miner argues that the elements of negligent misrepresentation under Arizona law are "(1) supplying false information (2) for another's guidance in its business transactions." (*Id.*) Thus, Miner argues, the arbitrator was ignoring the law because he placed undue emphasis on the fact that the Kepner representative was not negligent in reaching his belief that the previous pipe problems were caused by contractor error. (*Id.*)

In fact, the case that Miner cites states that one of the elements of negligent misrepresentation is that the defendant must "fail[] to exercise reasonable care or

competence in obtaining or communicating the [false] information." *Sage v. Blagg Appraisal Co., Ltd.*, 221 Aris 33, 35, 209 P.3d 169, 171 (App. 2009). As such, the arbitrator's finding that there was "no evidence in the record that [the representative] was negligent in reaching his belief that the . . . leaks were caused by contractor error" was entirely appropriate. Miner has pointed to no other evidence that the arbitrator manifestly disregarded clearly established law in deciding against Miner on the negligent misrepresentation claim. Thus, Miner's Petition is denied on this ground.

**V.     Award of Fees and Costs**

Miner contends that the arbitrator exceeded the scope of his authority in awarding Kepner fees and costs. (Doc. 1 at 11.) In determining whether an arbitrator exceeded his power, "courts must not decide the rightness or wrongness of the arbitrator['s] contract interpretation" and "must accord considerable deference to the arbitrator's judgment." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991). A court may vacate an arbitration award on grounds of exceeding authority only "when the award is completely irrational." *Kyocera*, 341 F.3d at 997 (internal quotations omitted).

Here, Miner contends that the arbitrator should have applied A.R.S. § 12-341.01(A) and allowed Kepner to recover fees for "only claims arising out of contract." (Doc. 1 at 11.) That statute states that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." A.R.S. § 12-341.01(A). The arbitrator considered this argument and decided that "A.R.S. § 12-341.01 is not applicable" because the parties agreed, in their Submission Agreement, that the arbitrator could determine attorneys' fees and costs and that there would be no cap on the amount of the award. (Doc. 1-L at 3, 6.) Furthermore, the Submission Agreement stipulated that the arbitration would be conducted pursuant to the AAA Arbitration Rules, and those rules expressly authorize an award of fees. (*Id.* at 2, 6.) Under Arizona law, "when a contract has an attorney's fees provision it controls to the exclusion of the statute." *Lisa v. Strom*, 183 Ariz. 415, 418 n.2, 904 P.2d 1239, 1242 n.2

(App. 1995). As such, the arbitrator did not manifestly disregard the law in determining that A.R.S. § 12-341.01 was inapplicable.

Miner also claims that the arbitrator misinterpreted the terms of the contract. It asserts that Kepner's Standard Terms and Conditions provide that Miner will "'pay all reasonable costs of collection,' not attorneys' fees and costs incurred in litigation." (Doc. 1 at 12.) The arbitrator examined this argument and found that the Submission Agreement, providing for attorneys' fees and costs to be awarded by the arbitrator, was controlling rather than Kepner's Standard Terms and Conditions. (Doc. 1-6 at 3.) Moreover, as Miner later concedes, even Kepner's Standard Terms and Conditions provided that the buyer would be responsible for "a reasonable sum for attorney fees." (Doc. 22 at 7.) The arbitrator's decision to apply the Submission Agreement, which was the governing document for the arbitration process, cannot be characterized as "completely irrational." *Kyocera*, 341 F.3d at 997.

Miner also argues that the arbitrator improperly relied on "the inconclusive email dialogue between the attorneys" to "govern the issuance of fees and costs." (*Id.*) The arbitrator apparently relied on the email chain as evidence of the parties' intent in interpreting the Submission Agreement. (Doc. 1-L at 3.) It did not, as Miner suggests, rely solely on the email chain to determine whether to award Kepner fees and costs. The arbitrator's reliance on the email chain to determine the parties' intent was not "completely irrational" and the Court does not find that he exceeded the scope of his powers in so doing.

Miner further asserts that the arbitrator improperly found that the Submission Agreement contained a fee-shifting arrangement. It argues that the arbitrator "clearly exceeded his authority" "[b]y employing a straight 'prevailing party' analysis with no provision permitting such an expansive reading." (Doc. 22 at 10.) The arbitrator considered Miner's argument that there could be no fee-shifting because no express clause provided for it in the Submission Agreement. He found, however, that Miner should have limited the language of the Submission Agreement to allow only recovery of

"the costs of collection" if it wanted to preserve its right to argue that the Agreement precluded fee-shifting. (Doc. 1-L at 4.) The language of the Submission agreement expressly provides that the arbitrator will determine "the amount of attorneys' fees and costs (or costs of collection)." Given this language, the Court does not find the arbitrator's determination that fee-shifting was permitted "completely irrational." The arbitrator's interpretation is entitled to a substantial amount of deference, and in this case his reading of the Agreement was reasonable. The Court therefore declines to vacate the arbitration award on the ground that the arbitrator exceeded the scope of his authority. Miner's Petition to Vacate Arbitration Award is therefore denied.

**IT IS THEREFORE ORDERED** that A. Miner Contracting, Inc.'s Petition to Vacate Arbitration Award and Award of Fees and Costs (Doc. 1) is **DENIED**. The Clerk of Court is directed to terminate this action.

Dated this 20th day of December, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge